UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | | |
|---|---|---|---|
| In re: | : | CASE No. | 02-51167 (JJT) |
| | : | | |
| JAMES J. LICATA, | : | CHAPTER | 7 |
| DEBTOR. | : | | |
| | : | | |
| RONALD I. CHORCHES, TRUSTEE, | : | ADV. PRO. No. | 16-05016 |
| PLAINTIFF | : | | |
| v. | : | | |
| | : | RE: ECF Nos. | 1, 8, 9, 17 |
| JAMES J. LICATA, | : | | |
| DEFENDANT. | : | | |

**RULING AND MEMORANDUM OF DECISION
ON MOTION TO DISMISS**

*Introduction*

Before the Court is James J. Licata's ("Mr. Licata", "Debtor" or "Defendant") Motion to Dismiss Counts Two and Three of the Trustee's Nondischargeability Complaint pursuant to Fed. R. Bankr. P. 7012(b)(6) (ECF No. 8, the "Motion" or "Motion to Dismiss"). Counts Two and Three of the Complaint seek to deny Mr. Licata's discharge, pursuant to 11 U.S.C. §§ 727(a)(3) or 727(a)(4)(D), respectively, on account of his alleged failure to provide the Trustee with an analysis of his tax liabilities (the "Tax Analysis"), or sufficient underlying information, necessary to complete a forensic analysis determining the value of the Debtor's investment in certain real estate assets located in New Jersey (the "Real Estate Assets"). The Defendant asserts that both claims must fail because he disclosed the existence of the Tax Analysis – a postpetition analysis of prepetition financial information regarding his investments in the Real Estate Assets – to the Trustee, who then failed to compel its production by subpoena or other formal demand. Therefore,

the Defendant posits, the Trustee has not properly alleged that Mr. Licata "concealed, destroyed, mutilated, falsified, or failed to keep or preserve" the Tax Analysis, as required under section 727(a)(3), nor can he establish that Mr. Licata "fraudulently . . . withheld" the Tax Analysis from "an officer of the estate entitled to possession", under section 727(a)(4)(D). While the Defendant's disclosure-based arguments may hold some superficial appeal, they misconstrue Mr. Licata's obligations as a Chapter 7 Debtor and mischaracterize the Complaint's allegations supporting Counts Two and Three, which, contrary to the Motion's selective reading, extend beyond the Defendant's failure to produce the Tax Analysis.

Accordingly, the Motion to Dismiss is denied.

*Background and Factual Allegations*

On June 27, 2002, Mr. Licata filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code. The Debtor's bankruptcy was converted to a Chapter 7 case on June 28, 2006, (the "Conversion Date") at which time, Ronald I. Chorches was appointed as the estate's duly authorized trustee (the "Trustee"). The Trustee commenced this adversary proceeding on March 30, 2016, asserting five counts, each of which seeks to deny the Debtor's discharge pursuant to various provisions of 11 U.S.C. § 727 (ECF No. 1, the "Complaint" or "Compl.").

Prior to commencing his Chapter 11 case, Mr. Licata was engaged in protracted litigation against a former business partner, Peter Mocco, in the State of New Jersey (the "New Jersey Litigation"). The central dispute in the New Jersey Litigation was the identity of the owner(s) of the Real Estate Assets. On the Conversion Date, the Trustee stepped into the Debtor's role in the New Jersey Litigation representing the interests of the bankruptcy estate.

In 2013, the presiding judge in the New Jersey Litigation, the Hon. James Rothschild, requested that the Trustee provide a forensic analysis evidencing the amount of money Mr. Licata

had invested in the Real Estate Assets (the "Forensic Analysis").[1] Judge Rothschild informed the Trustee that this information would be important to his determination on the merits as to the legal owner of the Real Estate Assets.[2] Mr. Licata then "informed counsel for the Trustee that he had recently completed an analysis for the IRS (the "[Tax Analysis]") that would either serve as the Forensic Analysis or greatly assist in the drafting of the Forensic Analysis."[3] Though Mr. Licata voluntarily disclosed the existence of the Tax Analysis, he never provided the document to the Trustee,[4] nor did Mr. Licata, at any time, provide information to the Trustee that was sufficient to complete the Forensic Analysis without relying on the Tax Analysis.[5] As a result, the Trustee was forced to renege on his offer to provide Judge Rothschild with the Forensic Analysis, severely prejudicing the Trustee's likelihood of success in the New Jersey Litigation.[6]

The Defendant brought the instant Motion to Dismiss on June 1, 2016. Not long thereafter, the matter was reassigned to this Court. On February 1, 2017, the Court heard oral argument on the Motion, and took the matter under advisement.

*Standard of Review*

In determining a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), made applicable here under Fed. R. Bankr. P. 7012, the court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (quoting *Chase Grp.*

---

[1] Compl. at ¶ 26.

[2] *Id.* at ¶ 27.

[3] *Id.*

[4] *Id.* at ¶ 28.

[5] *Id.*

[6] *Id.* at ¶¶ 28-29.

*Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (internal quotation marks omitted)). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 (2009).

*Discussion*

At its core, the Motion – and its narrow focus on Mr. Licata's disclosure of the Tax Analysis' existence – is premised on a misreading of the Complaint. The Defendant does not dispute that the Trustee was entitled to any underlying information necessary to complete the Forensic Analysis requested by Judge Rothschild, nor could he credibly do so, given the sweeping breadth of a Chapter 7 debtor's disclosure obligations and the clear import of such information to elucidating the Debtor's material business transactions and substantial litigation flowing therefrom. Instead, Mr. Licata asserts that the Complaint contains "no allegation about . . . whether the Trustee[] could have compiled the [Forensic Analysis] requested by the judge in New Jersey from records within [his] possession."[7]

The Defendant is plainly mistaken. The Complaint states unequivocally, "Licata never provided information to the Trustee that would have permitted him to complete the Forensic Analysis".[8] In this context, there can be no doubt that the Motion must be denied.

As detailed further below, the Trustee has adequately pled his claims for relief under both 11 U.S.C. §§ 727(a)(3)and 727(a)(4)(D).

---

[7] Defendant's Memorandum of Law in Support of Motion to Dismiss (ECF No. 9, "Def. Mem.") at 2.

[8] Compl. at ¶ 28.

A. The Trustee's Count Two States A Claim Under 11 U.S.C. § 727(a)(3)

Section 727(a) provides, in pertinent part, that a "court shall grant the debtor a discharge, unless":

> **(3)** the debtor has ***concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information***, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case

11 U.S.C.A. § 727(a)(3) (emphasis added). In light of the provision's harsh penalties, the Second Circuit has "held that it must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996) (internal quotation omitted).

Nonetheless, "[i]t has long been law that the privilege of discharge depends upon the debtor's disclosure of a true and accurate picture of its financial affairs." *Id.* at 1309 (citing *In re Underhill*, 82 F.2d 258, 260 (2d Cir.), *cert. denied*, 299 U.S. 546, 57 S.Ct. 9, 81 L.Ed. 402 (1936)). "Section 727(a)(3) is designed to insure that the trustee and creditors will have sufficient information to permit an effective evaluation of the debtor's estate." *In re Moreau*, 161 B.R. 742, 746 (Bankr. D. Conn. 1993); *see also In re Kran*, 760 F.3d 206, 211, n. 2 (2d Cir. 2014) ("[S]ection 727(a)(3) . . . punish[es] actions that hamper the Trustee's ability to collect and distribute non-exempt assets on behalf of creditors."); *D.A.N. Joint Venture v. Cacioli* (*In re Cacioli*), 463 F.3d 229, 234 (2d Cir. 2006) (Section 727(a)(3) is designed to ensure that "creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history.") (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir.1992)).

Interpreting section 727(a)(3)'s predecessor provision under the Bankruptcy Act, the Second Circuit concluded: "Complete disclosure is in every case a condition precedent to the

granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies." *Underhill*, 82 F.2d at 260. "The complete disclosure requirement of *In Re Underhill* extends to all material business transactions of the debtor, including those pertaining to another's property, such as trust property or promissory notes." *Office of the Comptroller Gen. of Republic of Bolivia on Behalf of Gen. Command of Bolivian Air Force v. Tractman*, 107 B.R. 24, 27 (S.D.N.Y. 1989). This disclosure and the concomitant documentation requirement encompasses the Debtor's financial affairs "during the pendency of the bankruptcy proceedings and those obtaining for a reasonable period prior to the filing of the bankruptcy petition." *Kran*, 760 F.3d at 210 (internal quotations omitted).

In this Circuit, courts considering whether to deny a debtor's discharge pursuant to section 727(a)(3) follow a two-step inquiry. *Cacioli*, 463 F.3d at 235. The initial burden lies with the claimant to establish that "the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." *Id*. "If the creditor shows the absence of records, the burden falls upon the bankrupt to satisfy the court that his failure to produce them was justified." *Ibid.*

According to Mr. Licata, the Complaint does not allege that he concealed, destroyed, mutilated, falsified or failed to keep any recorded information, but merely alleges, to the contrary, that he disclosed the existence of the Tax Analysis and simply failed to give this Analysis to the Trustees.[9] The Trustee responds that Mr. Licata's failure to produce the Tax Analysis after, at a

---

[9] Def. Mem. at 3.

minimum, indicating that he would do so to facilitate Judge Rothschild's inquiry supports a reasonable inference that the Debtor either concealed, destroyed or failed to keep the document.[10]

The Court agrees with the Trustee. It is no large leap, and certainly reasonable, to infer that the Debtor ultimately concealed, destroyed or failed to keep a copy of the Tax Analysis when he reneged, without explanation, on his offer to provide a document that he understood to be valuable to the Trustee's case in the New Jersey Litigation. Indeed, such explanation would seem more plausible than the inference that Mr. Licata asks the Court to draw instead—that the Debtor ultimately decided against making the Trustee's task easier by voluntarily producing the Tax Analysis, after his unsolicited disclosure of the document and apparent offer to do just that.

Critically, however, the Debtor's framing of the Complaint ignores that Mr. Licata "never provided information to the Trustee that would have permitted him to complete the Forensic Analysis" concerning Licata's substantial prepetition investment in the Real Estate Assets. The production failure continued until at least 2013, more than six years beyond the Trustee's appointment.[11] This fact alone supports an inference that the Debtor concealed, destroyed or failed to keep recorded information regarding material business transactions.[12]

---

[10] Trustee's Memorandum of Law In Opposition, (ECF No. 17, "Tr. Mem.") at 6.

[11] Compl. at ¶ 28.

[12] Moreover, it makes no difference for purposes of section 727(a)(3), that the Debtor first disclosed the existence of the Tax Analysis, before ultimately failing, for whatever reason, to produce it to the Trustee. A party objecting to discharge under Section 727(a)(3), "need not demonstrate a debtor's intent to conceal his or her financial condition." *Moreau*, 161 B.R. at 746; *In re Kressner*, 206 B.R. 303, 315 (Bankr. S.D.N.Y. 1997), *aff'd*, 152 F.3d 919 (2d Cir. 1998) ("intent is not an element of a Section 727(a)(3) objection to discharge."). An objection to discharge may be sustained when there is "no evidence that the [d]ebtor concealed the requested documents", and the debtor merely "placed relevant financial information out of his control and abdicated his responsibility to obtain them and turn them over to the Trustee." *United States v. Sieber* (*In re Sieber*), 489 B.R. 531, 553 (Bankr. D. Md. 2013).

B. The Trustee's Count Three States A Claim Pursuant To 11 U.S.C. § 727(a)(4)(D)

Section 727(a) provides, in pertinent part, that a "court shall grant the debtor a discharge, unless":

**(4)** the debtor knowingly and *fraudulently*, in or in connection with the case—

\*   \*   \*

**(D)** *withheld from an officer of the estate entitled to possession* under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs

11 U.S.C. § 727(a)(4)(D) (emphasis added).

The Debtor asserts that the Trustee's claim must fail on account of the Trustee's failure to allege any facts supporting an inference that the Debtor "fraudulently" withheld the Tax Analysis, in light of the Debtor's voluntary disclosure of said Analysis.[13] The Debtor further argues that the Complaint fails to allege that the Trustee was "entitled to possession" of the Tax Analysis, as the document is not property of the estate, given that it was created more than six years after the case was converted and the Trustee was appointed.[14] Finally, the Debtor asserts that the Trustee's failure to avail himself of formal discovery mechanisms or otherwise demand the production of the Tax Analysis belies any claim of his entitlement to the Analysis or that the same was, in fact, "withheld".

The Trustee responds that the existence of fraudulent intent is a question of fact, which may not be resolved on a motion to dismiss, and that, as a Chapter 7 trustee, he was entitled to

---

[13] Def. Mem. at 4.

[14] *Id.*

possess the Tax Analysis.[15] Whether the Analysis is property of the estate, the Trustee answers, is the wrong inquiry, as Section 541 of the Code addresses property, not information, existing at the commencement of the case.[16]

As explained below, the Defendant's arguments are without merit, and therefore the Motion is denied as to Count Three of the Complaint.

### 1. The Trustee Properly Pled Knowledge and Intent Under 11 U.S.C. § 727(a)(4)

The Debtor does not dispute that he knowingly failed to produce the Tax Analysis.[17] Rather, Mr. Licata insists that the Complaint fails to include facts alleging that he did so "fraudulently", given his disclosure of the document's existence. This is another specious argument.

First, allegations of intent "may be alleged generally." Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009.

Second, one might reasonably infer fraudulent intent from the Debtor's unexplained failure to produce an important financial document that he voluntarily disclosed and initially offered to provide. *See In re Friedberg*, 516 B.R. 205, 212 (Bankr. D. Conn. 2014) (Fraudulent intent may be established "with circumstantial evidence such as when a debtor's conduct is evasive or persistently uncooperative or a debtor fails to explain his noncompliance with an order directing him to produce documents."); *In re Trinsey*, 114 B.R. 86, 92 (Bankr. E.D. Pa. 1990) (fraudulent intent inferred from changes of explanations as to why debtor failed to supply records).

---

[15] Tr. Mem. at 7.

[16] *Id.* at 7-8.

[17] This alone may be fatal to the Motion, as courts have held that "*knowing* failure to provide [material financial] information is sufficient to deny [a debtor's] discharge." *Tow v. Henley (In re Henley)*, 480 B.R. 708, 779 (Bankr. S.D. Tex. 2012) (emphasis in original).

Finally, yet perhaps most importantly, the Debtor's emphasis on his initial disclosure of the Tax Analysis is a red herring. The Complaint alleges that the Mr. Licata also failed to produce prepetition financial information to the Trustee that would enable him to complete the Forensic Analysis without relying on the Tax Analysis.[18] Moreover, there is no allegation that Mr. Licata disclosed the existence of such information akin to his disclosure of the Tax Analysis. Thus, even if the Debtor's disclosure-based arguments were compelling, they cannot defeat the Trustee's broader section 727(a)(4)(D) claim.[19]

### 2. The Trustee Was Entitled to Possession of Financial Information Necessary to Understand the Debtor's Material Business Transactions

True to form, the Debtor further argues that the Trustee was not entitled to possession of the Tax Analysis, while ignoring facts supporting the Trustee's broader section 727(a)(4)(D) claim. The Court will not entertain this tortured misreading of the Complaint.

There can be no doubt that the Trustee was, at a minimum, presumptively entitled to possession of any and all financial information that was necessary to understand the Debtor's material business transactions, including those central to the New Jersey Litigation. *See Tractman*, 107 B.R. at 27. This includes analyses of financial records, to the extent necessary to understand otherwise inscrutable or labyrinthine transactions. *See In re Frommann*, 153 B.R. 113, 118 (Bankr. E.D.N.Y. 1993) ("[A] debtor cannot simply place sacks of records before the bankruptcy judge or trustee and request the judge or trustee to sift through the documents and attempt to reconstruct the flow of the debtor's assets."); *accord Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir.

---

[18] Compl. at ¶ 28.

[19] The Debtor's novel construction of fraudulent intent is frivolous. *See* Def. Mem. at 4 (defining the term "fraudulently", under § 727(a)(4), to mean efforts to hinder, delay or defraud creditors, apparently excluding efforts to hinder or delay the Trustee); *but see* 11 U.S.C. § 727(a)(4)(D) (discharge shall be granted unless a debtor "knowingly and fraudulently . . . withheld [recorded information relating to his financial affairs] from ***an officer of the estate*** . . .") (emphasis added).

1992) ("Creditors are not required to risk having the debtor withhold or conceal assets under cover of a chaotic or incomplete set of books or records.").

Indeed, Debtors bear an affirmative obligation to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under section 344 of this title." 11 U.S.C. § 521(a)(4). "Section 727(a)(4)(D) enforces this obligation by denying discharge to debtors who intentionally withhold records, books, documents, or other papers relating to their property or financial affairs." *In re Young*, 346 B.R. 597, 615 (Bankr. E.D.N.Y. 2006) (internal citation omitted).[20]

The courts have construed debtors' production obligations under this provision broadly. *See Friedberg*, 516 B.R. at 212. The provision imposes an affirmative duty to provide "all requested documents to the trustee for [his] review, and failure to do so constitutes grounds for denial of discharge." *Id* (quoting *Pereira v. Gardner* (*In re Gardner*), 384 B.R. 654, 668 (Bankr. S.D.N.Y. 2008); *In re Erdheim*, 197 B.R. 23, 28 (Bankr. E.D.N.Y. 1996). Though the Complaint does not explicitly state that the Trustee made a request of Mr. Licata to produce the Tax Analysis or other information sufficient to perform the Forensic Analysis sought by Judge Rothschild, the existence of such a request may reasonably be inferred from the facts alleged. In particular, Judge Rothschild directed his request for information *to the Trustee*, and then Mr. Licata disclosed the existence of information responsive to that request.[21] This sequence of events leads to a reasonable, if far from ineluctable, inference that the Trustee requested financial information from the Debtor necessary to complete the Forensic Analysis.

---

[20] The Debtor's assertion, without legal citation, that the Court should rely upon Section 541 of the Code, which addresses property existing at the outset of the case, not financial information, is meritless.

[21] *See* Compl. at ¶¶ 26-27.

Finally, it is of no moment, under section 727(a)(4)(D), that the Trustee declined to demand the Tax Analysis by way of formal discovery mechanism. *See Erdheim*, 197 B.R. at 25-26, 30. "While posing interrogatories or conducting a Rule 2004 examination are two ways of getting information," debtors bear an independent obligation to cooperate with Chapter 7 trustees. *Rupp v. Auld* (*In re Auld*), 561 B.R. 512, 522 (B.A.P. 10th Cir. 2017) (citing Rule 4002(a)(4)). [22]

In *Erdheim*, for example, the court granted a Chapter 7 trustee's motion for summary judgment, under section 727(a)(4)(D), where the debtor therein refused to produce documents which the trustee had informally requested in several letters. *Erdheim*, 197 B.R. at 25-26, 30. The court rejected that debtor's "harp[ing] on the [t]rustee's failure to conduct discovery against third parties . . . without addressing the [t]rustee's repeated requests for production of certain documents." Neither will this Court countenance the Debtor's excuse that the Trustee failed "to compel [him] to produce the [Tax Analysis], either by Rule 2004 examination in the Chapter 7 case or by subpoena in the New Jersey Litigation."[23]

Quite simply, the Trustee, as fiduciary of the Chapter 7 estate, has sufficiently alleged his entitlement to possession of the Tax Analysis and any underlying information necessary to understand the Debtor's material business transactions at issue in the New Jersey Litigation. In so doing, he properly states a claim upon which relief may be granted.

---

[22] Bankruptcy Rule 4002 provides, in pertinent part, that "the Debtor shall . . . cooperate with the trustee in the preparation of an inventory, the examination of proofs of claim, and the administration of the estate." Fed. R. Bankr. P. 4002(a)(4). Pursuant to 11 U.S.C. § 521, moreover, a debtor shall "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title." 11 U.S.C. § 521(a)(3). This includes the "obligation to cooperate with the trustee and trustee's counsel in prosecution of the adversary proceedings." *In re Blurton*, 334 B.R. 602, 608 (Bankr. W.D. Tenn. 2005).

[23] Def. Mem. at 4.

*Conclusion*

For the foregoing reasons, the Motion to Dismiss is denied.

IT IS SO ORDERED at Hartford, Connecticut this 14th day of June 2017.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut